In re Theodore BARRY, Jean D. Barry, Debtors.

Larry E. STAATS, Trustee in Bankruptcy for Jean D. Barry, Plaintiff,

v.

Theodore BARRY, et al., Defendants.

Bankruptcy No. 2-80-01739.
Adv. No. 2-82-0286.

United States Bankruptcy Court, S.D. Ohio, E.D.

March 4, 1983.

Larry E. Staats, Columbus, Ohio, for plaintiff/trustee.

Daniel K. Friend, Columbus, Ohio, for debtor/defendants.

Albert R. Ritcher, Asst. U.S. Atty., Columbus, Ohio, Jonathan B. Forman, Trial Attorney, Tax Division, U.S. Dept. of Justice, Washington, D.C., Lorenz Equipment Co. c/o Eugene W. Butler, Statutory Agent, Columbus, Ohio, Patrick F. Timmins, Jr., Columbus, Ohio, for Lorenz Equipment Co.

## FINDINGS, CONCLUSIONS, AND ORDER ON COMPLAINT TO VACATE TRANSFER AND TAX LIENS

THOMAS M. HERBERT, Bankruptcy Judge.

This matter is before the Court upon plaintiff's Complaint to Vacate Transfer and Tax Liens. Defendant United States of America, Internal Revenue Service (IRS) filed a Motion to Dismiss which was overruled by the Court on August 19, 1982. Answers were then filed by defendants Theodore Barry and IRS. Subsequent to hearing by the Court, post-trial briefs were filed by plaintiff and by IRS.

Plaintiff is trustee in the jointly filed Chapter 7 bankruptcy proceeding of Theodore and Jean Barry commenced on May 19, 1980. Pursuant to 11 U.S.C. § 548(a)(2), plaintiff seeks to avoid a transfer of real property from defendant Jean Barry to Theodore Barry, which was made within one year of the order for relief and allegedly for less than reasonably equivalent value. Plaintiff also, pursuant to 11 U.S.C. § 547, attempts to avoid an alleged preferential transfer to defendant Lorenz Equipment Co. (Lorenz), and requests an order avoiding IRS' statutory tax liens as preferential transfers. In the alternative, plaintiff asks the Court to determine the extent and priority of such tax liens in connection with the preservation of the avoided transfer pursuant to 11 U.S.C. § 551. Plaintiff requests further that the Court determine the

effect, if any, of 11 U.S.C. § 724(b) upon the facts of this case.

· Theodore Barry, although initially opposing the trustee's complaint, later withdrew his opposition to the allegations of a fraudulent transfer. With his agreement, an order was entered on December 15, 1982, granting judgment in favor of plaintiff against Theodore Barry, and vacating and setting aside the real estate transfer.

Lorenz failed to contest the trustee's allegation that it received a preferential transfer of property through the filing of a Certificate of Judgment within ninety (90) days prior to the bankruptcy filing on May 19, 1980. Pursuant to 11 U.S.C. § 547, the Court's order of December 15, 1982 granted plaintiff a default judgment against Lorenz, and set aside and vacated Lorenz' Certificate of Judgment and resulting transfer.

IRS opposes plaintiff's attempts to set aside its tax liens as preferential transfers. It also resists the trustee's contention that 11 U.S.C. § 551, by preserving the avoided transfer for the benefit of the estate, subordinates the IRS lien against that portion of the property involved in the avoided fraudulent transfer to the estate's interest. IRS argues that its filed tax liens have attached to the entire parcel of real estate and cannot be altered by the trustee's avoidance. Finally, the trustee asserts that the portion of IRS' claim which represents a penalty is not part of any lien and is avoidable pursuant to 11 U.S.C. §§ 724(a) and 726(a)(4).

The facts are uncontroverted. The real property, located at 606 Old Coach Road, Westerville, Ohio, serving as the debtors' residence, and subject to an undisputed first mortgage in favor of Chemical Mortgage Co., was owned in fee simple by Jean Barry prior to September 22, 1979. On that date she executed a deed transferring ownership of the property to herself and her husband as Tenants by the Entireties with Right of Survivorship. IRS filed its Notices of Tax Liens on April 7, 1980 and April 30, 1980. The tax liens arose out of unpaid obligations for various employer taxes dating from June 30, 1979 through December 31, 1979 for which each of the Barrys were responsible both individually and as partners in a business enterprise known as Blacktop Co. The tax amounts, taken from IRS' proof of claim and not controverted by the trustee, were $11,304.13 for the April 7, 1980 Notice of Tax Lien, and $283.71 for the April 30, 1980 Notice of Tax Lien. The proof of claim filed by IRS also included unsecured claims for income taxes for 1976, 1977, and 1978. Pre-petition penalty amounts of $1,448.22 and $3,397.90 are shown for the employment and income taxes respectively.

The Court concludes that the IRS tax liens are not avoidable pursuant to 11 U.S.C. § 547. Tax liens are statutory liens which arise under the provisions of 26 U.S.C. § 6321 et seq. Although the fixing of some statutory liens can be avoided if all elements of preferential transfer are otherwise met, the explicit limitation on the trustee's avoiding power set out in 11 U.S.C. § 547(c)(6) is controlling in this instance. Section 547(c)(6) states:

> (c) The trustee may not avoid under this section a transfer—. . .
>
> (6) that is the fixing of a statutory lien that is *not avoidable* under section 545 of this title. (Emphasis added).

■ 11 U.S.C. § 545, which sets out the types of statutory liens a trustee in bankruptcy may avoid, does not include a tax lien asserted by the United States government for which a Notice of Tax Lien has been properly filed before the bankruptcy estate is created. Therefore, to the extent the Notice of Tax Lien was properly filed, the statutory lien is not avoidable by the trustee pursuant to 11 U.S.C. § 547(c)(6).

■ The trustee's contention that the lien for $1,448.22, disclosed as a pre-petition penalty, is avoidable pursuant to 11 U.S.C. §§ 724(a) and 726(a)(4) is, however, well taken. In fact, such assertion does not appear to be contested by IRS in its post-trial brief. Section 724(a) gives the trustee the power to avoid a lien based upon a claim for any pre-petition penalty, to the extent that such penalty is not compensation for actual pecuniary loss. IRS has not shown any

reason why its lien should not be avoided to the extent of the $1,448.22 set out as a pre-petition penalty, and such relief is hereby granted in favor of the trustee.

The remaining issue herein is the extent and priority of the IRS lien as that lien is affected by the avoided transfer and by the operation of 11 U.S.C. § 551. Plaintiff urges that the IRS lien is a lien only against Jean Barry's undivided one-half interest in the real estate existing at the time the Notice of Tax Lien was filed. IRS argues that its lien attached to Jean Barry's fee simple interest, which existed before the fraudulent transfer, and that the trustee's subsequent avoidance of the fraudulent transfer cannot alter the extent of that lien.

Section 551 of the United States Code states:

> any transfer avoided under section . . . 548 . . . or 724(a) of this title, . . . is preserved for the benefit of the estate but only with respect to property of the estate.

The purpose of § 551 is to allow a trustee in bankruptcy, upon avoidance of certain preferential or fraudulent transfers, to increase the assets of the bankruptcy estate. This basic practice existed under the now-repealed Bankruptcy Act of 1898, and assures that a junior lienor shall not be able to improve its position because a trustee has successfully avoided a lien or a transfer. See, *Moore v. Bay,* 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133 (1931). In effect, the trustee is subrogated to the rights of the transferee in the avoided transfer or the lien creditor with the avoided lien. *Egyptian Supply Co. v. Boyd,* 117 F.2d 608 (6th Cir.1941). Although preservation of avoided liens and transfers is no longer discretionary with the Court under the provisions of the Bankruptcy Reform Act of 1978, but rather is provided for automatically by 11 U.S.C. § 551, the effect of such preservation under the Bankruptcy Act of 1898 remains relevant.

At the time IRS filed its Notices of Tax Liens, those liens became perfected against bona fide purchasers of any real property "belonging to such person" against whom the liens were filed. See, 26 U.S.C. § 6321. The extent of the taxpayer's interest in the real property on the date the tax liens were filed is determined by state law, and the liens can only attach to property and rights to property existing at the time the liens were perfected. *Aquilino v. United States,* 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960).

In the instant case, the real property was owned by Theodore and Jean Barry as tenants by the entirety when the Notices of Tax Liens were filed for tax obligations owed by both. The question which remains, therefore, is whether Jean Barry's interest as a tenant by the entirety extended to the entire property, or only to an undivided portion thereof. If the avoidance of the transfer expanded her interest from a portion to a fee, the IRS liens attached only to the smaller interest she had at the time the Notices of Tax Liens were filed, given the trustee's status as a bona fide purchaser of the property as of the date the petition in bankruptcy was filed. See, 11 U.S.C. § 544(a)(3).

Creation of an estate by the entireties was codified in Ohio in 1972. The enabling statute (R.C. 5302.17) does not delineate the legal implications of this form of ownership. Under common law, such an estate meant that each of the tenants were seized of the whole, or entirety, and not of a share. C. Moynihan, *Introduction to the Law of Real Property,* § 6 (1962); see, *Lang v. Commissioner,* 289 U.S. 109, 53 S.Ct. 534, 77 L.Ed. 1066 (1933). The only discovered case which construes the Ohio statute concludes that Ohio courts, were they to be faced with the question, would view ownership as tenants by the entirety as ownership of the whole by both spouses, with no divisible interest on behalf of one spouse. *In re Thomas,* 14 B.R. 423 (Bkrtcy.N.D.Ohio 1981).

Such an interpretation compels a finding that, despite avoidance of the transfer from Jean Barry to Jean and Theodore Barry, Jean Barry had an interest in the

entire property at the time the IRS Notices of Tax Liens were filed. The taxes were obligations of both parties and the liens attached to both parties' interests in the entire property. Thus, although the subsequent avoidance of the transfer caused IRS to lose its secured status in Theodore Barry's estate, the transfer made no practical difference in IRS' rights against Jean Barry's interest as a tenant by the entirety, which interest was transformed into a sole interest in fee simple as a result of the avoidance. Despite the automatic preservation of the avoided transfer, Jean Barry's pre-avoidance interest by the entirety is subject to IRS' lien rights. *Tennessee Machinery Co. Inc. v. Appalachian Energy Industries Inc. (In re Appalachian Energy Industries Inc.),* 9 Bankr.Ct.Dec. 1162, 25 B.R. 515 (Bkrtcy.M.D.Tenn.1982).

A final issue for resolution in this cause concerns the effect of 11 U.S.C. § 724(b) upon the facts at bar. That section provides:

> (b) Property in which the estate has an interest and that is subject to a lien that is not avoidable under this title and that secures an allowed claim for taxes, or proceeds of such property, shall be distributed—
>
> (1) first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;
>
> (2) second, to claims specified in sections 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4), and 507(a)(5) of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien;
>
> (3) third, to the holder of such tax lien, to any extent that such holder's allowed claim that is secured by such tax lien exceeds any amount distributed under paragraph (2) of this subsection;
>
> (4) fourth, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is junior to such tax lien;
>
> (5) fifth, to the holder of such tax lien, to the extent that such holder's allowed claim secured by such tax lien is not paid under paragraph (3) of this subsection; and
>
> (6) sixth, to the estate.

As can be seen, these provisions work to deny IRS the benefits of a secured status for purposes of distribution to unsecured claimants in higher priority catagories than tax claims. Thus, use of § 724(b) impairs IRS' lien status in Jean Barry's estate by relegating the subject IRS tax claims to a sixth priority as determined under § 507(a). These claims for which the Notices of Tax Liens were properly filed are, however, prior to all other claims in that § 507(a)(6) class.

With these findings, the Court determines that IRS had a secured claim in this Chapter 7 proceeding by virtue of its properly filed Notices of Tax Liens. That claim, subject to a decrease of $1,448.22 pursuant to the trustee's powers under 11 U.S.C. § 724(a), attached to Jean Barry's interest as a tenant by the entirety in the real estate located at 606 Old Coach Road, Westerville, Ohio, and became a secured claim to the extent of the creditor's interest in the estate's interest in the property. See 11 U.S.C. § 506(a). The Court finds further that, although the value of the avoided transfer is preserved for the benefit of the estate pursuant to § 551, the preserved value is subject to the prior first mortgage in favor of Chemical Mortgage Co. and to the prior lien status of IRS. Notwithstanding the foregoing, however, IRS' secured status has been modified by the provisions of § 724(b) so that its formerly secured claim is now, in effect, an unsecured claim entitled to priority status pursuant to § 507(a)(6), and prior to any other claims within that same priority class.

IT IS SO ORDERED.